# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| GREGORY ALLEN PEET, SR., et al.,            ) | |
|                                             ) | |
| Plaintiffs,                                 ) | |
|                                             ) | |
| v.                                          ) | No. 1:24-CV-00094 SNLJ |
|                                             ) | |
| CITY OF SIKESTON, et al.,                   ) | |
|                                             ) | |
| Defendants.                                 ) | |

## MEMORANDUM AND ORDER

Before the Court is plaintiff Gregory Allen Peet Sr.'s motion for leave to proceed in forma pauperis in this civil action.[1] [ECF No. 1]. The Court will grant the motion to proceed in forma pauperis in this action. After reviewing the complaint, however, plaintiff Gregory Peet will be required to submit an amended complaint on a Court-provided form for filing a Civil Complaint. Accordingly, the Court will deny defendants' motion to dismiss without prejudice, with leave to refile the motion after the refiling of plaintiff Gregory Peet's amended complaint.

## Legal Standard on Initial Review

This Court is required to review a complaint filed in forma pauperis to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). This Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such

---

[1] A pro se plaintiff lacks standing to bring claims on behalf of others. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (stating that to satisfy the standing requirement, a plaintiff "must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties"). Further, while federal law authorizes a plaintiff to plead and conduct his own case personally, 28 U.S.C. § 1654, he is not a licensed attorney, and therefore may not represent other individuals in Federal Court. *See Lewis v. Lenc–Smith Mfg. Co.,* 784 F.2d 829, 830 (7th Cir. 1986). As such, the Court will strike plaintiff Audrea Peet from this action.

relief. 28 U.S.C. § 1915(e)(2). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555). *See also Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (courts must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.").

This Court liberally construes complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Liberal construction" means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even complaints filed by self-represented persons must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, and are not required to interpret

2

procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff Gregory Peet and his wife Audrea Peet jointly filed this civil action pro se on May 15, 2024. As noted above, only Gregory Peet submitted a submitted a motion to proceed in forma pauperis in this matter. Because, as noted above, a non-attorney pro se litigant may not represent someone else in federal court, *see* 28 U.S.C. § 1654, the Court will strike plaintiff Audrea Peet from this action. *See also Jones ex rel. Jones v. Correctional Medical Services, Inc.*, 401 F.3d 950, 952 (8th Cir. 2005) (stating that "a non-attorney…may not engage in the practice of law on behalf of others") and *Iannaccone v. Law*, 142 F.3d 553, 558 (2nd Cir. 1998) (stating that "because pro se means to appear for one's self, a person may not appear on another's behalf in the other's cause…A person must be litigating an interest personal to him"). For the foregoing reasons, plaintiff Gregory Peet will be required to amend his complaint on a Court-provided Civil Complaint form.

Plaintiff Gregory Peet's type-written complaint is 113 pages in length.[2] It contains sixteen (16) claims for relief against ten (10) defendants: the City of Sikeston, Missouri; Greg Turnbow (Mayor); Jonathan Douglass (City Manager); James McMillen (Chief of Police); John Broom (Captain); Tyler Rowe (Sergeant); Michael Minner (Police Officer); Stewart's Auto Sales, Inc.; Roger Stewart; and Tiffany Stewart. It appears that defendants Roger Stewart and Tiffany Stewart are private citizens, who purportedly own Stewart Auto Sales. The remaining defendants are alleged to be employed by the City of Sikeston, Missouri, and are sued in both their individual and official capacities pursuant to 42 U.S.C. § 1983. As the Stewart defendants are not state actors,

---

[2]All references to plaintiff hereinafter is to plaintiff Gregory Peet.

they cannot be sued under 42 U.S.C. § 1983 unless it can be properly alleged they acted in a civil conspiracy. *See Burbridge v. City of St. Louis, Missouri*, 2 F.4th 774, 782-83 (8th Cir. 2021) (explaining that "[t]o prevail on a [42 U.S.C.] § 1983 conspiracy claim, [the plaintiff] must show that (1) the defendants agreed to deprive him of his constitutional rights; (2) at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy; and (3) [the plaintiff] was injured by the overt act").

The matters at issue in the complaint appear to have arisen when a dispute arose in February of 2022 between plaintiff and Roger Stewart regarding a deal between the two. According to plaintiff, he owned a 2001 Ford F350 Truck that he bought for approximately $12,0000 in December of 2001, as well as a 28-foot "goose-neck trailer" which he bought for $1,200 in January of 2022 and later upgraded. Plaintiff alleges that he and his wife were looking at land on Facebook on or about February 23, 2022, to build a family home. After speaking with an unnamed land seller, plaintiff "worked out a verbal agreement" for $19,500 for approximately one acre of land. Plaintiff was given three (3) days to come up with the money for the land. He decided to see if he could get the money for the land by selling his truck along with his "goose-neck" trailer, so he went around to different car dealerships in the City of Sikeston to see what local car dealers would offer him for the sale of his truck and trailer.

At around 11 a.m. on February 23, 2022, plaintiff stopped at Stewart Auto Sales to see Roger Stewart to discuss the matter with him. Stewart allegedly told plaintiff he also had land for sale located on Vanduser Street in Vanduser, Missouri. According to plaintiff, Stewart said there were eight (8) mobile homes (trailers) sitting on 1.5 acres of land on the property. Plaintiff claims that Stewart showed him a quitclaim deed for the property, telling him that he and his wife, Tiffany

4

Stewart were the owners of the property and had been since July of 1997. This, apparently, is defendant Tiffany Stewart's only alleged connection to the present lawsuit.

Roger Stewart allegedly told plaintiff he wanted $28,000 in cash to sell the property; however, Stewart would do a deal with plaintiff to allow plaintiff to pay $30,000 for the property in total. Plaintiff would have to put $10,000 down while make monthly payments of $2,000 until the property was paid in full. Plaintiff claims he told Stewart that he and his wife (Audrea) already had the other land deal available, but that if it did not work out, they would call him. Nonetheless, Stewart suggested they "write down the terms [they] discussed" to use it as a reference to remember what was said about the deal in case plaintiff called later. Plaintiff claims that he and Stewart then began to discuss plaintiff selling Stewart his truck and "goose-neck" trailer. Stewart offered $6,000 for both the truck and trailer, but plaintiff countered with $19,500. Stewart told plaintiff he was unable to offer that much, and plaintiff left to go to the next dealership. Plaintiff alleges that he and his wife decided not to buy the first property on Friday February 25, 2022. That same day, plaintiff began engaging in negotiations with Stewart to buy the Vanduser property.

Plaintiff claims that he and his wife, relying on the representation that Stewart owned the Vanduser property, counteroffered as to Stewart's initial proposal. The counteroffer from plaintiff was to use the 2001 F350 valued at $11,000, the "goose-neck" trailer valued at $3,000 and $2,000 in cash as part of the down payment for the property. The total down payment was to be $16,000.00 with an agreement to pay $2,000 per month towards the remaining $14,000.00 balance over the next seven (7) months to pay off the $30,000 the property was being sold for. Plaintiff and Stewart allegedly agreed that the truck and trailer, as well as the Vanduser property, would have to be inspected before "any final decisions would be made." A meeting was scheduled for February 25,

5

2022, at 1:00 p.m., between the parties. Plaintiff alleges that each of the parties would have three (3) days to do inspections.

Plaintiff took his truck and trailer to Stewart Auto Sales at the agreed time, and Stewart asked him to leave the vehicle and trailer there to have the inspections done. Stewart told plaintiff that if the parties decided not to sign the contract, plaintiff's truck and trailer would be returned to him on February 28, 2022, along with the $2,000 in cash. At the time that plaintiff left the truck, trailer and cash at Stewart Auto Sales, he had not yet seen the Vanduser property. However, plaintiff had asked a contractor named John Henry Rhoden, Sr., owner of Rhoden Construction and Towing, to meet him at the Vanduser property on February 26, 2022, to see how much he would charge to remove the trailers from the property and level the land.

Plaintiff met Rhoden at the Vanduser property. He asserts that instead of eight (8) abandoned mobile homes at the property he found one abandoned mobile home. Additionally, the property was not one-acre but was instead a fifty-foot easement. Plaintiff took pictures while he was at the property, and on his way home from the property he called Stewart to confront him about the discrepancies in the alleged property description. Stewart told plaintiff they would discuss the issues in person on Monday, February 28, 2022.

At 10:30 a.m. on February 28, 2022, plaintiff met Stewart at Stewart Auto Sales. Plaintiff alleges that when he went inside to meet Stewart he found his personal property, including keys to the 2001 F-350 truck, registration papers, titles, insurance papers, Audrea Peet social security card, personal documents (some of which were financial), on Roger Stewart's table. He then told Stewart he had decided to pass on buying the Vanduser property and did not want to enter into a contract-for-deed. Plaintiff requested his $2,000 back as well. However, according to plaintiff, Stewart refused to give back plaintiff's property or his cash, claiming ownership and possession

6

of the truck and trailer, personal property, including keys to the 2001 F-350 truck, registration papers, titles, insurance papers, Audrea Peet social security card. Stewart allegedly told plaintiff he had already sold the truck and trailer. Stewart then placed the documents inside a locked drawer in his office. Plaintiff threatened to call the Sikeston Police Department, and Stewart responded that he would call the police for him.

Plaintiff alleges that Stewart put his phone on speaker and called the Sikeston Police Department and asked to speak to Officer John Broom. Plaintiff claims that Stewart falsely told Broom that Gregory Peet was at Stewart's Auto Sales trying to remove a truck and trailer that plaintiff traded in for Stewart's Vanduser property. When Stewart allegedly told Broom that he had a signed receipt for the transaction, Broom told Stewart he would "handle it for [Stewart]."

Plaintiff alleges that he walked to the Sikeston Police Station to make a complaint against Stewart from the phone there, which was answered by Office Minner. Minner drove plaintiff back to Stewart Auto Sales, and at the location, he turned on his body-cam. When Minner and plaintiff walked into Stewart's office, plaintiff's personal papers were back on the table once again. Minner looked through the paperwork, including the truck registration papers, titles, insurance papers, and Audrea Peet social security card. Plaintiff asserts that Minner then asked the dispatcher to run a search through the police database on both Gregory and Audrea Peet. He claims that he asked Minner three times for his paperwork to be returned to him, and he became standoffish, placing his revolver in an "easily retrievable mode." Minner then allegedly handed the paperwork to Stewart, and Stewart presented Minner with a purported contract allegedly claiming that the plaintiff had traded his truck for the Vanduser property. Plaintiff was then told by Minner that he needed to wait for him outside the building. Approximately fifteen to twenty minutes later, Sergeant Rowe from the Sikeston Police Department pulled up to Stewart Auto Sales in an

7

unmarked vehicle and went inside. After Rowe was inside for approximately fifteen minutes, Rowe came outside to speak with plaintiff.

After plaintiff told Rowe his side of the story, Rowe told plaintiff that Stewart had shown him a signed receipt which Stewart was claiming was a contract to trade the F350 and trailer in on some land Stewart owned at 1100 Vanduser Street in Vanduser, Missouri. Rowe told plaintiff that he and Minner had spoken to Stewart's attorney, Fred Thornton, III, over the phone, who told them that and plaintiff had a signed legally binding contract in his office and that the receipt was the contract, and that Stewart was the owner of the F350 and 28-foot "goose-neck" trailer. Plaintiff told Rowe that even if the police do not want to pursue criminal charges, he should be able to retrieve his property. Rowe went back inside the office at Stewart's Auto Sales.

Plaintiff entered his F350 truck and then attempted to break into the ignition because he lacked an extra set of car keys. When plaintiff looked up, Minner, Steart and Rowe were pounding on the window of the truck. Plaintiff claims that he was told to get out of the truck by the two officers, and Minner further stated that if he moved his truck, he would be arrested for stealing or attempted stealing of a motor vehicle. Plaintiff got out of the truck and argued that he should be allowed to leave with his vehicle. He says the officers then went inside the building again with Stewart. Plaintiff then called Rhoden towing to have his truck and trailer towed. Rhoden towing arrived within ten minutes.

Plaintiff alleges that when he was "guiding Rhoden's tow truck driver to get his truck and trailer," Minner strategically placed himself behind the tow truck so that he could stop plaintiff from having his truck and trailer towed. Minner then gave Rhoden an order not to move or hook up the tow truck to plaintiff's vehicle or trailer. Minner then told plaintiff he needed to leave the property of Stewart Auto Sales. When plaintiff asked Rowe if he could speak with him, Rowe told

8

plaintiff he needed to comply with Minner's orders. Plaintiff left Stewart Auto Sales and drove to the police station. Plaintiff filed a complaint with a captain at the police station, whereupon he saw Stewart drive by in his truck with his trailer.

Plaintiff claims that he later found out that Stewart did not lawfully own the Vanduser property. Additionally, although he filed a claim relating to the incident with his insurance company, Liberty Mutual, The City of Sikeston Police Chief McMillen supplied the following information in reference to the plaintiff theft claim:

> That after the City of Sikeston Police Department Officers Mc Millen, Minner, Rowe, Broom, investigations it founded by us that Gregory Peet and Roger Stewart have a legal binding contract in which Gregory Peet traded his truck and trailer in to purchase Roger Stewart's property at 1100 Vanduser Street, Vanduser, Missouri. Peet changed his mind later and now seeks to get out of the contract. We are also investigating Peet for possible insurance fraud, in which the investigation is still ongoing. I have spoken to Roger Stewart, and he have given me a statement and evidence in which we used to support our findings.

Plaintiff seeks damages in this action.

## Discussion

In the complaint, plaintiff purports to assert multiple claims against a multitude of defendants based on events that occurred in February of 2022 relating to an alleged agreement to trade his truck and trailer for a piece of land near Sikeston, Missouri. The main defendants in this case are Roger Stewart, James McMillen and Tyler Rowe. Despite this fact, plaintiff has made numerous allegations against a plethora of other defendants, the majority of which fail to contain supporting allegations.

The Federal Rules of Civil Procedure require litigants to formulate their pleadings in an organized and comprehensible manner. Even pro se plaintiffs are required to set out not only their alleged claims in a simple, concise, and direct manner, but also the facts in support of such claims. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). Here, plaintiff has not done so. While this

Court must liberally construe pro se filings, this Court will not construct claims or assume facts that plaintiff has not alleged. *See Stone v. Harry,* 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the pro se plaintiff that assumed facts that had not been pleaded). Plaintiff's "kitchen-sink" approach to his complaint is in direct contravention to Federal Rules of Civil Procedure 8 and 10 and will not be countenanced by this Court.

### Instructions for Filing Amended Complaint

In consideration of plaintiff's self-represented status, the Court will give him the opportunity to submit an amended complaint. Plaintiff is warned that the filing of an amended complaint replaces the original complaint, and so it must include all claims plaintiff wishes to bring. *E.g.*, *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005).

Plaintiff must submit the amended complaint on a court-provided form, and the amended complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 requires plaintiff to set forth a short and plain statement of the claim showing entitlement to relief, and it also requires that each averment be simple, concise and direct. Rule 10 requires plaintiff to state his claims in separately numbered paragraphs, each limited as far as practicable to a single set of circumstances.

In the "Caption" section of the amended complaint, plaintiff must state the first and last name, to the extent he knows it, of each defendant he wishes to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both. The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

In the "Statement of Claim" section, plaintiff should begin by writing a defendant's name. In separate, numbered paragraphs under that name, plaintiff should: (1) set forth the factual allegations supporting his claim against that defendant; (2) state what constitutional or federal statutory right(s) that defendant violated; and (3) state whether the defendant is being sued in his/her individual capacity or official capacity. If plaintiff is suing more than one defendant, he should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the factual allegations supporting his claim or claims against that defendant. No introductory or conclusory paragraphs are necessary.

If plaintiff is suing more than one defendant, he should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Unrelated claims against different defendants belong in different suits. In other words, "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Alternatively, plaintiff may choose a single defendant and set forth as many claims as he has against that defendant. *See* Fed. R. Civ. P. 18(a).

*Plaintiff should avoid naming anyone as a defendant unless that person is directly related to his claim or claims.* Plaintiff's failure to make specific and actionable allegations against any defendant will result in that defendant's dismissal from this case. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell*, 909 F.2d at 1208; *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). The Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a

cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017). Plaintiff must explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim.").

Plaintiff must not amend a complaint by filing separate documents. Instead, he must file a single, comprehensive pleading that sets forth his claims for relief. If plaintiff fails to file an amended complaint on a Court-provided form within thirty (30) days in accordance with the instructions set forth herein, the Court may dismiss this action without prejudice and without further notice to plaintiff.

Last, plaintiff should indicate in his amended pleading how the state court case against defendants, *Peet v. Sikeston, et al.,* No. 22SO-CV00248 (33rd Jud. Cir., Scott County Court), was ultimately resolved on or about July 14, 2022. If some or all the claims in that case were dismissed, plaintiff must inform the Court of such in his amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk shall **STRIKE** plaintiff Audrea Peet from this action.

**IT IS FURTHER ORDERED** that plaintiff's motion seeking an extension of time to file an amended complaint [ECF No. 9] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk shall mail to plaintiff a copy of the Court's form Non-Prisoner Civil Complaint.

**IT IS FURTHER ORDERED** that, within thirty (30) days of the date of this order, Plaintiff must file an amended complaint in accordance with the instructions herein.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss [ECF No. 5] is **DENIED WITHOUT PREJUDICE.**

**Plaintiff's failure to timely comply with this order may result in the dismissal of this case, without prejudice and without further notice.**

Dated this 17th day of June, 2024.

_____
STEPHEN N. LIMBAUGH, JR
SENIOR UNITED STATES DISTRICT JUDGE