# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | |
|---|---|
| GREGORY ALLEN PEET, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-CV-00094 SNLJ |
| | ) |
| CITY OF SIKESTON, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is plaintiff Gregory Allen Peet Sr.'s second amended complaint, as well as his motion for leave to file a third amended complaint. Also before the Court is defendants' motion to dismiss plaintiff's second amended complaint. Defendants make multiple arguments for dismissal of plaintiff's second amended complaint, but common to all is the assertion that this case should be dismissed for failure to state a claim upon which relief may be granted. Defendants also oppose the filing of the third amended complaint based on grounds of futility.

For the reasons stated below, the Court will allow plaintiff to file his third amended complaint, which supersedes his second amended complaint. As such, defendants' motion to dismiss will be denied as moot. After reviewing the third amended complaint pursuant to 28 U.S.C. § 1915, however, the Court dismisses this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). Any state law claims contained within the third amended complaint are dismissed pursuant to 28 U.S.C. § 1367(c).

### Legal Standard on Initial Review

This Court is required to review a complaint filed in forma pauperis and must dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks

monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

District courts must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," courts should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). District courts are not required to assume facts that are not alleged, *Stone*, 364

2

F.3d at 914-15, or interpret procedural rules in a manner that excuses the mistakes of those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**Background**

Plaintiff Gregory Peet and his wife Audrea Peet jointly filed this civil action pro se on May 15, 2024. [ECF No. 1]. Because a non-attorney pro se litigant may not represent someone else in federal court, the Court struck Audrea Peet from this action. *See* ECF No. 11. Plaintiff's initial complaint was 113 pages in length and contained sixteen (16) claims against thirteen (13) defendants. *See* ECF No. 1. Accordingly, on June 17, 2024, the Court ordered plaintiff to amend his pleading on a Court-provided form. [ECF No. 11]. Defendants' motion to dismiss the initial complaint, which was filed on June 10, 2024, was denied as moot. *See* ECF Nos. 5 and 7.

Plaintiff filed his amended complaint on July 17, 2024. [ECF No. 12]. Shortly thereafter, on July 22, 2024, defendants filed a motion to dismiss the amended complaint. [ECF Nos. 13 and 14]. Because plaintiff failed to comply with the Court's Order requiring him to submit his amended complaint on a Court-required form, the Court issued an Order on July 30, 2024, requiring plaintiff to amend his pleading on a Court-form within twenty-one (21) days. [ECF No. 15]. Plaintiff filed his second amended complaint on August 19, 2024. [ECF No. 16]. Defendants filed a motion to dismiss the second amended complaint on August 23, 2024. [ECF Nos. 17 and 18].

Rather than respond to defendants' pleading, on September 18, 2024, plaintiff filed a motion for leave to file a third amended complaint. *See* ECF No. 19. Defendants opposed the motion, and plaintiff filed a reply brief. [ECF Nos. 20 and 23]. Defendants filed a motion to strike plaintiff's reply brief, or in the alternative, for leave to file a sur-reply, along with a memorandum in support. [ECF Nos. 24 and 25]. Plaintiff filed his response briefs to the motion to dismiss the second amended complaint on October 8, 2024. [ECF Nos. 28 and 29].

3

Also before the Court are plaintiff's motion for appointment of counsel, defendants' response to the motion, as well as plaintiff's motion to expedite discovery. [ECF Nos. 21, 22 and 26].

**The Second Amended Complaint and Proposed Third Amended Complaint**

Plaintiff Gregory Peet's second complaint, filed on August 19, 2024, is forty-four (44) pages in length. [ECF No. 16]. It contains twelve (12) claims for relief against four (4) defendants: the City of Sikeston, Missouri; James McMillen (Chief of Police); Tyler Rowe (Sergeant); and Michael Minner (Police Officer). Defendants are sued in both their individual and official capacities. As set forth above, defendants filed a motion to dismiss the second amended complaint on August 23, 2024. [ECF Nos. 17 and 18]. This prompted plaintiff to file a motion for leave to file a third amended complaint on September 18, 2024. [ECF No. 19]. Although defendants oppose the filing of the third amended complaint, the Court will allow plaintiff to file his pleading. However, plaintiff's third amended complaint is still subject to review for frivolousness, maliciousness and failure to state a claim because plaintiff is proceeding as a pauper in this action. *See* 28 U.S.C. § 1915(e)(2)(B).

Plaintiff's third amended complaint is twenty-five (25) pages in length and contains seven counts (7) against three (3) defendants: the City of Sikeston; Tyler Rowe (Sergeant); and Michael Minner (Police Officer). [ECF No. 19]. Defendants are sued in both their individual and official capacities.

The matters at issue in the third amended complaint appear to have arisen when a dispute arose in February of 2022 between plaintiff and Roger Stewart, the alleged owner of Stewart Auto Sales in Sikeston, Missouri. According to plaintiff, he owned a 2001 Ford F350 Truck that he bought for approximately $12,0000 in December of 2001, as well as a 28-foot "goose-neck trailer"

4

which he bought for $1,200 in January of 2022 and later upgraded. Plaintiff alleges that he and his wife were looking at land on Facebook on or about February 23, 2022, to build a family home. After speaking with an unnamed land seller, plaintiff "worked out a verbal agreement" for $19,500 for approximately one acre of land. Plaintiff was given three (3) days to come up with the money for the land. He decided to see if he could get the money for the land by selling his truck along with his "goose-neck" trailer, so he went around to different car dealerships in the City of Sikeston to see what local car dealers would offer him for the sale of his truck and trailer.

At around 11 a.m. on February 23, 2022, plaintiff stopped at Stewart Auto Sales to see Roger Stewart to discuss the matter with him. Stewart allegedly told plaintiff he also had land for sale located on Vanduser Street in Vanduser, Missouri. According to plaintiff, Stewart said there were eight (8) mobile homes (trailers) sitting on 1.5 acres of land on the property. Plaintiff claims that Stewart showed him a quitclaim deed for the property, telling him that he and his wife, Tiffany Stewart were the owners of the property and had been since July of 1997.

Roger Stewart allegedly told plaintiff he wanted $28,000 in cash to sell the property; however, Stewart would do a deal with plaintiff to allow plaintiff to pay $30,000 for the property in total. Plaintiff would have to put $10,000 down while make monthly payments of $2,000 until the property was paid in full. Plaintiff claims he told Stewart that he and his wife (Audrea) already had the other land deal available, but that if it did not work out, they would call him. Nonetheless, Stewart suggested they "write down the terms [they] discussed" to use it as a reference to remember what was said about the deal in case plaintiff called later. Plaintiff claims that he and Stewart then began to discuss plaintiff selling Stewart his truck and "goose-neck" trailer. Stewart offered $6,000 for both the truck and trailer, but plaintiff countered with $19,500. Stewart told plaintiff he was unable to offer that much, and plaintiff left to go to the next dealership. Plaintiff

5

alleges that he and his wife decided not to buy the first property on Friday February 25, 2022. That same day, plaintiff began engaging in negotiations with Stewart to buy the Vanduser property.

Plaintiff claims that he and his wife, relying on the representation that Stewart owned the Vanduser property, counteroffered as to Stewart's initial proposal. The counteroffer from plaintiff was to use the 2001 F350 valued at $11,000, the "goose-neck" trailer valued at $3,000 and $2,000 in cash as part of the down payment for the property. The total down payment was to be $16,000.00 with an agreement to pay $2,000 per month towards the remaining $14,000.00 balance over the next seven (7) months to pay off the $30,000 the property was being sold for. Plaintiff and Stewart allegedly agreed that the truck and trailer, as well as the Vanduser property, would have to be inspected before "any final decisions would be made." A meeting was scheduled for February 25, 2022, at 1:00 p.m., between the parties. Plaintiff alleges that each of the parties would have three (3) days to do inspections.

Plaintiff took his truck and trailer to Stewart Auto Sales at the agreed time, and Stewart asked him to leave the vehicle and trailer there to have the inspections done. Stewart told plaintiff that if the parties decided not to sign the contract, plaintiff's truck and trailer would be returned to him on February 28, 2022, along with the $2,000 in cash. At the time that plaintiff left the truck, trailer and cash at Stewart Auto Sales, he had not yet seen the Vanduser property. However, plaintiff had asked a contractor named John Henry Rhoden, Sr., owner of Rhoden Construction and Towing, to meet him at the Vanduser property on February 26, 2022, to see how much he would charge to remove the trailers from the property and level the land.

Plaintiff met Rhoden at the Vanduser property. He asserts that instead of eight (8) abandoned mobile homes at the property he found one abandoned mobile home. Additionally, the property was not one-acre but was instead a fifty-foot easement. Plaintiff took pictures while he

6

was at the property, and on his way home from the property he called Stewart to confront him about the discrepancies in the alleged property description. Stewart told plaintiff they would discuss the issues in person on Monday, February 28, 2022.

At 10:30 a.m. on February 28, 2022, plaintiff met Stewart at Stewart Auto Sales. Plaintiff alleges that when he went inside to meet Stewart he found his personal property, including keys to the 2001 F-350 truck, registration papers, titles, insurance papers, Audrea Peet social security card, personal documents (some of which were financial), on Roger Stewart's table. He then told Stewart he had decided to pass on buying the Vanduser property and did not want to enter a contract-for-deed. Plaintiff requested his $2,000 back as well. However, according to plaintiff, Stewart refused to give back plaintiff's property or his cash, claiming ownership and possession of the truck and trailer, personal property, including keys to the 2001 F-350 truck, registration papers, titles, insurance papers and Audrea Peet's social security card. Stewart allegedly told plaintiff he had already sold the truck and trailer. Stewart then placed the documents inside a locked drawer in his office. Plaintiff threatened to call the Sikeston Police Department, and Stewart responded that he would call the police for him.

Plaintiff alleges that Stewart put his phone on speaker and called the Sikeston Police Department and asked to speak to Officer John Broom. Plaintiff claims that Stewart falsely told Broom that Gregory Peet was at Stewart's Auto Sales trying to remove a truck and trailer that plaintiff traded in for Stewart's Vanduser property. When Stewart allegedly told Broom that he had a signed receipt for the transaction, Broom told Stewart he would "handle it for [Stewart]."

Plaintiff alleges that he then walked to the Sikeston Police Station to make a complaint against Stewart from the phone there, which was answered by Office Minner. Minner drove plaintiff back to Stewart Auto Sales, and at the location, he turned on his body-cam. When Minner

7

and plaintiff walked into Stewart's office, plaintiff's personal papers were back on the table once again. Minner purportedly requested the papers from Stewart and then looked through the paperwork, including the truck registration papers, titles, insurance papers, and Audrea Peet's social security card. Plaintiff asserts that Minner then asked the dispatcher to run a search through the police database on both Gregory and Audrea Peet. Stewart presented Minner with a carbon copy receipt of the purported contract with plaintiff. After reviewing the alleged contract, Minner handed the paperwork back to Stewart. Minner purportedly deemed the matter a civil issue and "refused to investigate further." Plaintiff then requested that Minner call a supervisor to come speak with him about Minner's "misconduct." Approximately fifteen minutes later, Sergeant Tyler Rowe arrived at Stewart Auto Sales in a Sikeston Police car. After Rowe was inside for approximately fifteen minutes, Rowe came outside to speak with plaintiff.

After plaintiff told Rowe his side of the story, Rowe told plaintiff that Stewart had shown him a signed receipt which Stewart was claiming was a contract to trade the F350 and trailer in on some land Stewart owned at 1100 Vanduser Street in Vanduser, Missouri. Rowe told plaintiff that he and Minner had spoken to Stewart's attorney, Fred Thornton, III, over the phone, who told them that Stewart and plaintiff had a signed legally binding contract in his office and that the receipt was the contract, and that Stewart was the owner of the F350 and 28-foot "goose-neck" trailer. Plaintiff told Rowe that even if the police do not want to pursue criminal charges, he should be able to retrieve his property. Rowe went back inside the office at Stewart's Auto Sales.

Plaintiff entered his F350 truck and then attempted to break into the ignition because he lacked an extra set of car keys. When plaintiff looked up, Minner, Stewart and Rowe were pounding on the window of the truck. Plaintiff claims that he was told to get out of the truck by the two officers, and Minner further stated that if he moved his truck, he would be arrested for

8

stealing or attempted stealing of a motor vehicle. Plaintiff got out of the truck and argued that he should be allowed to leave with his vehicle. He says the officers then went inside the building again with Stewart. Plaintiff then called Rhoden towing to have his truck and trailer towed. Rhoden towing arrived within ten minutes.

Plaintiff alleges that when he was "guiding Rhoden's tow truck driver to get his truck and trailer," Minner strategically placed himself behind the tow truck so that he could stop plaintiff from having his truck and trailer towed. Minner then gave Rhoden an order not to move or hook up the tow truck to plaintiff's vehicle or trailer. Minner then told plaintiff he needed to leave the property of Stewart Auto Sales. When plaintiff asked Rowe if he could speak with him, Rowe told plaintiff he needed to comply with Minner's orders. Plaintiff left Stewart Auto Sales and drove to the police station. Plaintiff filed a complaint with a captain at the police station, whereupon he saw Stewart drive by in his truck with his trailer.

Plaintiff claims that he later found out that Stewart did not lawfully own the Vanduser property. Additionally, although he filed a claim relating to the incident with his insurance company, Liberty Mutual, The City of Sikeston Police Chief McMillen supplied the following information in reference to the plaintiff's theft claim:

> That after the City of Sikeston Police Department Officers McMillen, Minner, Rowe, Broom, investigations it was founded by us that Gregory Peet and Roger Stewart have a legal binding contract in which Gregory Peet traded his truck and trailer in to purchase Roger Stewart's property at 1100 Vanduser Street, Vanduser, Missouri. Peet changed his mind later and now seeks to get out of the contract. We are also investigating Peet for possible insurance fraud, in which the investigation is still ongoing. I have spoken to Roger Stewart, and he have given me a statement and evidence in which we used to support our findings.

9

**Plaintiff's Claims for Relief**

As noted above, plaintiff filed his third amended complaint against three defendants in their individual and official capacities. The Court will review plaintiff's claims in his third amended complaint pursuant to 28 U.S.C. § 1915 for frivolousness, maliciousness and failure to state a claim.

Plaintiff brings claims against defendant Michael Minner, in his individual capacity, pursuant to 42 U.S.C. § 1983, for an alleged "failure to keep the peace" as outlined by a Missouri state statute. He additionally claims that defendant Tyler Rowe should be held liable, in his individual capacity, for failing to adequately supervise Officer Minner.

Last, plaintiff asserts that the City of Sikeston should be held liable under a *Monell* theory of liability for the actions of Officer Minner and Sergeant Rowe. He claims that these officers' actions on behalf of the City violated his procedural and substantive due process rights under the Fourteenth Amendment when they unlawfully seized property that belonged to plaintiff. Plaintiff also asserts that the City of Sikeston is responsible under *Monell* for the unlawful actions of Officer Minner and Sergeant Rowe. He asserts that he was retaliated against by defendants Minner and Rowe, under the First Amendment, for exercising his rights to redress and to speech.

Plaintiff seeks compensatory and punitive damages in this action.

**Discussion**

**A. Plaintiff's Official Capacity Claims Against Defendants Are Subject to Dismissal**

Plaintiff filed this action on a Court-form for bringing allegations pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Department of Social Services*, 436 U.S. 658, 685 (1978). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution

or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). To prevail on his official capacity claims, plaintiff must establish the liability of the City of Sikeston, the governmental employer, for the alleged conduct. *See Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). A local governing body such as the City of Sikeston can be sued directly under 42 U.S.C. § 1983. *See Monell,* 436 U.S. at 690. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

Here, plaintiff argues for all three theories of tort liability under *Monell* for alleged violations of his Fourteenth Amendment rights when his property was purportedly seized. But regardless of the theory argued under, plaintiff's own allegations establish that neither Officer Minner nor Sergeant Rowe seized plaintiff's cash, truck, trailer or documents; thus, he cannot establish a Fourteenth Amendment claim against the City of Sikeston.

Plaintiff alleges in the third amended complaint that these items were seized by Roger Stewart when he took the items and placed them in his desk drawer, and then later, Stewart showed the items to the police, but he claimed an ownership interest in the items. There is no dispute that Roger Stewart was not a state actor. Stewart was not employed by the City of Sikeston, nor has plaintiff alleged that he was acting in concert with an employee with the City of Sikeston.[1]

---

[1] "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dept. of*

11

Furthermore, direction from an officer to leave property is insufficient to allege possession of said property, let alone a violation of a custom or policy. *See Trident Steel Corp. v. Siffin*, No. 4:20-CV-932 SPM, 2023 WL 2524960, *10 (E.D.Mo. Mar. 15, 2023) (analyzing seizure and requirement that possession be taken). As such, plaintiff's allegations in Counts I, II and III, in which plaintiff alleges that the City of Sikeston was subject to *Monell* liability for unlawful seizure, are subject to dismissal.

Plaintiff next asserts that the City of Sikeston should be held liable under *Monell* for alleged retaliation for engaging in his First Amendment rights. He claims that Officer Minner took adverse action against him for criticizing him and accusing Minner of misconduct, namely for asking for a supervisor after Officer Minner deemed the alleged breach of contract action between Stewart and plaintiff a "civil matter." Plaintiff alleges that the "adverse action" taken against him by Officer Minner included "threatening him with arrest, obstructing his attempts to recover his property, and depriving him of his property without due process." Furthermore, plaintiff appears to allege that Officer Minner took an "adverse action" of refusing to assist him (redress his grievance) when he sought to file a criminal complaint of fraud and theft against Stewart.

To demonstrate retaliation under the First Amendment, a plaintiff "must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that

---

*Social Services*, 489 U.S. 189, 195 (1989). In other words, the Due Process Clause "forbids the State itself to deprive individuals of life, liberty, or property without due process of law," but does not "impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.* Nevertheless, "substantive due process does require a state to protect individuals under two specific circumstances." *Fields v. Abbott*, 652 F.3d 886, 890 (8th Cir. 2011).

> First, the state owes a duty to protect those in its custody. Second, the state owes a duty to protect individuals if [the state] created the danger to which the individuals are subjected.

*Id.* (quoting *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005). Neither instance applies in this case.

12

would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cty., Mo.*, 738 F.3d 907, 911 (8th Cir. 2013). The retaliatory conduct does not need to be a constitutional violation to be actionable. *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001). However, the "reason for the government official's action must have been to prevent the plaintiff from engaging in the protected activity." *Saylor v. Nebraska*, 812 F.3d 637, 646 (8th Cir. 2016).

Plaintiff attempts to assert that because Officer Minner failed to criminally prosecute Roger Stewart, he should be held liable for retaliating against plaintiff. Plaintiff, however, cannot turn the First Amendment on its head and require Officer Minner to prosecute Roger Stewart for what Officer Minner perceived to be a civil matter.

Pursuant to the standing requirement, "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another," unless that person has either been prosecuted or threatened with prosecution himself. *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973). If a person is not being prosecuted or threatened with prosecution, he or she "lacks standing to contest the policies of the prosecuting authority." *Id. See also Parkhurst v. Tabor*, 569 F.3d 861, 867 (8th Cir. 2009) (dismissing plaintiffs' claims against prosecutors and county for allegedly discriminatory failure to prosecute because plaintiffs were "neither prosecuted nor threatened with prosecution," and thus "lacked standing to bring this claim"). The same rationale concerning the lack of standing to challenge the non-prosecution of another applies "to cases where the alleged victim challenges the decision to arrest or not arrest another." *Nelson v. Maples*, 2016 WL 9047149, at *3 (W.D. Mo. 2016), *aff'd*, 672 Fed. Appx. 621, 621-22 (8th Cir. 2017).

"[D]iscretion is essential to the criminal justice process." *See McCleskey v. Kemp*, 481 U.S. 279, 297 (1987). As such, "officers cannot be expected to make an arrest or initiate a formal

13

investigation in response to every complaint." *Villanueva v. City of Scottsbluff*, 779 F.3d 507, 513 (8th Cir. 2015). *See also Ricketts v. City of Columbia, Mo.*, 36 F.3d 775, 780 (8th Cir. 1994) ("Holding that an officer's failure to arrest for one incident of harassment causes a subsequent incident of harassment or violence would essentially take away the officer's discretion to determine when to arrest – a fundamental part of our criminal system") (emphasis in original).

Given the aforementioned, the Court finds plaintiff's allegations of retaliation under the First Amendment by Officer Minner subject to dismissal.

### B. Plaintiff's Individual Capacity Claims are Subject to Dismissal

#### 1. Plaintiff's Allegations that Defendant Minner Failed to "Keep the Peace"

Plaintiff alleges that Officer Minner violated a Missouri state statute, Mo. Rev. Stat. § 84.090, when he failed to "keep the peace" on February 28, 2022. Plaintiff admits in his third amended complaint that the statute in question does not create a private right of action. Nevertheless, he states that a violation of the statute deprived him of his due process rights under the Fourteenth Amendment.

Unfortunately, the statute to which plaintiff cites applies only to police officers employed by Kansas City and St. Louis City, and Officer Minner and Sergeant Rowe were employed by Sikeston Police Department. Thus, the Court need not analyze the applicability of the statute cited by plaintiff.[2] The Court notes, however, that there is caselaw in Missouri finding that a police officer's decision about whether to conduct an arrest or a traffic stop is discretionary. *See, e.g., Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005). And whether Officer Minner had the discretion to return plaintiff's property to him or allow Stewart to keep the

---

[2]The Court has been unable to find a similar statute relative to the City of Sikeston or to "third class cities" in the State of Missouri.

property – or go so far as to arrest Stewart when plaintiff sought assistance from Minner - seems to be the heart of plaintiff's complaint.

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." Amdt. 14, § 1. While the underlying property or liberty interest is created by state law, federal constitutional law "determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 757 (2005) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978)).

The Supreme Court has refused to recognize a substantive due process right to governmental aid or protection, except in a few limited circumstances, even when governmental aid is necessary to protect liberty or property interests from private interference. *See DeShaney*, 489 U.S. at 201-02. The Supreme Court also has considered whether a party may assert a claim for deprivation of procedural due process, based upon a state's failure to protect liberty or property interests. *Town of Castle Rock*, 545 U.S. at 750–51.

In *Castle Rock*, the Supreme Court looked to relevant state law to determine whether that law established a property or liberty interest in governmental aid or assistance and held, in that case, that no such interest existed. *Id.* at 768 ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations."). Specifically, the Supreme Court stated that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.* at 756.

Accordingly, the relevant inquiry is whether there is a Missouri law that *guarantees* citizens a property interest in police assistance to make an arrest. As to criminal arrest, as this

15

Court noted above, 'a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another.' *Linda R.S.*, 410 U.S. at 619. The wide latitude afforded government officials in deciding whether and how to enforce public safety laws recognized in *Castle Rock* controls here. Police officers and other enforcement officials simply could not function if every decision not to make an arrest or other custodial action were subject to judicial review and second guessing.

Further, Missouri state law provides that generally, arrests and attempted arrests are classified as discretionary functions. *See, e.g., Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo 1984) (en banc); *Harrah's North Kansas City, LLC*, 170 S.W.3d at 479 ("Deciding whether or not to arrest someone is a matter of discretion—the officer must decide what course should be pursued based on the circumstances at hand); *see also Highfill v. Hale*, 186 S.W.3d 277, 280 (Mo.2006) (en banc) (noting that the officer has discretion to determine whether to make an arrest). Plaintiff offers neither facts nor legal authority in support of his claim that Officer Minner should have "kept the peace," forced Stewart to return his property and/or arrested Stewart if necessary. Accordingly, he has failed to allege that his due process rights were violated by Officer Minner.

2. **Plaintiff's Allegations that Defendant Rowe Should be Held Liable for Failing to Adequately Supervise Defendant Minner**

Plaintiff alleges in the third amended complaint that Sergeant Rowe "failed to adequately supervise" Officer Minner, and that in doing so, he gave "tacit approval" to Officer Minner's unconstitutional misconduct.

"A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (citing *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)). "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d

16

1203, 1208 (8th Cir. 1990). To be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985).

"[A] supervisor's liability arises if: 'he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.'" *Tlamka*, 244 F.3d at 635 (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted)); *see also Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997).

Plaintiff has not alleged that Officer Minner was inadequately trained to respond to the dispute between he and Roger Stewart. Rather, he asserts that Sergeant Rowe "perpetuated" and "failed to correct" Officer Minner's actions. Plaintiff further alleges that Rowe "was made aware of and disregarded the false claims propagated by Stewart and his attorney. . ." These allegations go toward Rowe's actions rather than a supervisory role over Officer Minner.

In requiring a plaintiff to allege facts showing each defendant's personal involvement in the deprivation of his constitutional rights, the Court assesses each defendant relative to his or her authority over the claimed constitutional violation. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). A person with a supervisory or administrative position may be liable only if his or her direct action or failure to supervise and train the offending employee caused the constitutional violation. *Id.* (citations omitted). Such person's personal involvement can also be established by allegations that he or she was directly involved in "creating, applying, or interpreting a policy" that gives rise to unconstitutional conditions. *Id.* (citations omitted).

Plaintiff does not allege that Officer Minner and Sergeant Rowe were acting pursuant to a policy. Instead, he asserts that Sergeant Rowe "instructed plaintiff to comply with Officer Minner's unlawful orders." Although plaintiff may not have agreed with Officer Minner's orders on

17

February 28, 2022, Officer Minner told plaintiff that he believed the dispute between he and Stewart was a "civil one." Plaintiff's recourse was to hire a civil attorney or attempt to negotiate the matter with Stewart peacefully. Plaintiff has failed, however, to properly allege claim for supervisory liability of Sergeant Rowe.

## Conclusion

After carefully reading and liberally construing the third amended complaint, the Court concludes the claims in this lawsuit are not viable under 42 U.S.C. § 1983. The Court cannot envision an amendment to the third amended complaint that would cause it to state a claim upon which relief may be granted. The Court will therefore dismiss the third amended complaint at this time, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to file a third amended complaint [ECF No. 19] is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss the second amended complaint [ECF No. 17] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 21] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that defendants' motion to strike plaintiff's reply brief, or in the alternative, file a sur-reply, [ECF No. 24] is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's motion to expedite discovery [ECF No. 26] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that to the extent plaintiff is seeking relief under Missouri state law, those claims are subject to dismissal, without prejudice, pursuant to 28 U.S.C. § 1367(c).

**IT IS FURTHER ORDERED** that an appeal from this Order would not be taken in good faith.

A separate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 10th day of October, 2024.

_____
STEPHEN N. LIMBAUGH, JR
SENIOR UNITED STATES DISTRICT JUDGE